UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD MILFORD DIXON,

    Petitioner,

v.

CASE NO. 15-11977
HONORABLE NANCY G. EDMUNDS

PAUL KLEE,

    Respondent.
_____/

**OPINION AND ORDER
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
DENYING A CERTIFICATE OF APPEALABILITY, BUT
GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Ronald Milford Dixon ("Petitioner") has filed a *pro se* habeas corpus petition challenging a state court's determination that he violated the terms of probation. Respondent Paul Klee urges the Court through counsel to deny relief on the basis that the state court's decision was objectively reasonable. Having reviewed the record, the Court agrees that Petitioner's claim does not warrant habeas relief. Accordingly, the habeas petition will be denied.

### I. Background

On January 15, 2013, Petitioner pleaded guilty in Saginaw County Circuit Court to possession of less than twenty-five grams of cocaine. *See* Mich. Comp. Laws § 333.7403(2)(a)(v). On February 28, 2013, the trial court sentenced Petitioner to sixty days in jail (with credit for forty-seven days) and three years on probation. As a

condition of probation, Petitioner was expected to successfully complete an intensive substance-abuse program offered by an agency known as Tri-CAP.

Petitioner subsequently was charged with violating the terms of probation by not completing the Tri-CAP program. At an evidentiary hearing on the charge, Janet Cochran testified that she was employed as a senior case manager at the Tri-CAP residential probation center in Saginaw County. She stated that Petitioner entered the Tri-CAP program on April 1, 2013, and that he was asked to leave about sixty days later on June 5, 2013, due to his unwillingness to comply with program rules. The length of the program was supposed to be 150 days. (Probation Violation Hr'g Tr. at 8-9, 12, Aug. 15, 2013, ECF No. 9-8, Pg ID 163-64.)

According to Ms. Cochran, Petitioner filed grievances, returned late from appointments on three occasions, and did not follow the rules. Ms. Cochran explained that, although Petitioner had permission to go to appointments and to obtain insurance, he went other places, which did not involve his care or treatment, nor applications for insurance. (*Id.* at 9-10, Pg ID 163.)

Continuing, Ms. Cochran stated that Petitioner was cited for manipulation and for being outside the building without authorization. (*Id.* at 11-12, Pg ID 164.) He also filed grievances. Tri-CAP staff denied some of the grievances, such as the requests for legal forms and access to the library, because the agency did not have the forms and Petitioner's program did not permit library visits. After staff responded to Petitioner's grievances, he wrote more grievances. Staff interpreted the grievances as Petitioner's unwillingness to accept the fact that he was in the program. (*Id.* at 15-16, Pg ID 165.)

Petitioner testified at the hearing that Ms. Cochran's testimony was incorrect. He claimed that he was late returning from the hospital one time because he had trouble getting a ride back to Tri-CAP. He stated that he contacted Tri-CAP upon his discharge from the hospital, but he admitted that he did not subsequently notify staff that his brother-in-law would be bringing him back to Tri-CAP. He also conceded that he violated the rules by looking down the hallway at the women's side of the facility and by possessing roll-your-own cigarettes. Petitioner stated that he tried to comply with the rules and get to and from his appointments, but that sometimes he had to take the bus or walk. (*Id.* at 19-23, Pg ID 166-67.)

Following the evidentiary hearing, the trial court determined that the prosecution had satisfied its burden of proving by a preponderance of the evidence that Petitioner failed to complete the Tri-CAP program. The court took the witnesses' credibility into consideration and concluded that terminating Petitioner from Tri-CAP was justified. On September 16, 2013, the trial court revoked Petitioner's probation and sentenced Petitioner to prison for a minimum of two and a half years and a maximum of fifteen years with credit for 121 days.

Petitioner moved to set aside his conviction for violating probation on grounds that: (1) his attorney at the probation-violation hearing was ineffective; (2) the sentencing guidelines were miscalculated, and defense counsel was ineffective for failing to challenge the scoring of the guidelines; and (3) there were inaccuracies in his pre-sentence information report. The trial court ruled that defense counsel was not ineffective, but that Petitioner's sentencing guidelines were incorrectly scored. The trial

court then re-sentenced Petitioner to prison for a minimum of twenty-four months and a maximum of fifteen years with credit for 382 days.

Petitioner appealed the trial court's decision on his ineffective-assistance-of-counsel claim. The Michigan Court of Appeals denied leave to appeal for lack of merit in the ground presented. *See People v. Dixon*, No. 322051 (Mich. Ct. App. Aug. 6, 2014). On February 3, 2015, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issue. *See People v. Dixon*, 858 N.W.2d 444 (Mich. 2015).

On June 1, 2015, Petitioner filed his habeas corpus petition under 28 U.S.C. § 2254. He is currently on parole.

## II. Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that

reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### III. Analysis

Petitioner's sole ground for relief is that his attorney at the probation-violation hearing was ineffective because the attorney failed to investigate the evidence, failed to

subpoena witnesses, and assured Petitioner that he would prevail at the hearing without producing any witnesses.

### A. *Strickland v. Washington*

Clearly established federal law for purposes of Petitioner's claim is *Strickland, v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, "the defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id*. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*.

The "deficient performance" prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

The "prejudice" prong of the *Strickland* test "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).

Review under AEDPA, moreover, is "doubly deferential" when the claim at issue is one for ineffective assistance of counsel,

> because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable

6

> professional judgment," *Burt v. Titlow*, 571 U.S. ——, ——, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) (quoting *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); internal quotation marks omitted). In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Burt, supra*, at ——, 134 S. Ct., at 13.

*Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (*per curiam*).

### B. Application

#### 1. Failure to Investigate

Petitioner contends that his hearing attorney should have investigated the evidence and placed matters on the record to show that he did not violate any rules, that his grievances were valid, and that he did not write as many grievances as Ms. Cochran claimed. According to Petitioner, the evidence would establish that he tried to comply with Tri-CAP's program and rules and that he returned from appointments in a timely manner.

Defense attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. In this case, however, Petitioner admitted to engaging in some of the misconduct for which he was cited. For example, he conceded at the evidentiary hearing that he returned late to Tri-CAP when he went to the hospital for treatment. He also admitted that he filed grievances and that he violated the rules by looking at the women's side of the Tri-CAP facility and by possessing roll-your-own cigarettes. (Probation Violation Hr'g Tr. at 20-24, Aug. 15, 2013, ECF No. 9-8, Pg ID 166-67.)

In light of Petitioner's admissions at the evidentiary hearing, it does not appear that drawing attention to Tri-CAP records would have helped him. The records may have corroborated Ms. Cochran's testimony, rather than contradicted it, and been more

harmful than helpful to Petitioner's defense. The grievances, in particular, would have been harmful because, according to Ms. Cochran, staff at Tri-CAP interpreted the grievances to mean that Petitioner was not accepting the program. It was also her opinion that Petitioner would not be a successful resident if he went back to Tri-CAP. (*Id*. at 16-17, Pg ID 165.)

Furthermore, Petitioner was able to provide a defense to the charge against him by testifying at the hearing. He explained to the trial court that he followed orders and complied with the rules to the best of his ability, but that he experienced difficulties getting to and from appointments. (*Id*. at 22-23, Pg ID 166-67.) As for his grievances, he explained that he filed one grievance because he wanted to file a motion in one of his criminal cases; he filed a second grievance, requesting use of a library, when Tri-CAP staff informed him that they could not provide him with legal materials. (*Id*. at 23, Pg ID 167.)

The Court concludes that, even if defense counsel failed to make a reasonable investigation, the deficient performance did not prejudice the defense, given Petitioner's admissions and explanations at the evidentiary hearing. The Court therefore rejects Petitioner's claim about defense counsel's alleged failure to investigate and to establish certain matters on the record.

### 2. Failure to Subpoena Tri-CAP Staff

Petitioner argues next that his attorney should have subpoenaed the staff member who reported his violations of Tri-CAP rules.

A defense attorney's duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence."

8

*Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). An attorney's failure to conduct a reasonable investigation into a known and potentially important witness violates the Sixth Amendment right to the effective assistance of counsel. *Id.* at 259; *see also Pillette v. Berghuis*, 408 F. App'x 873, 884 (6th Cir. 2010) (stating that "[t]he failure to call favorable witnesses can amount to ineffective assistance where it results in prejudice to the defense").

Ms. Cochran testified at the state evidentiary hearing that, when rules are violated, the Tri-CAP person on duty prepares a "write-up," which goes to the residential manager, who evaluates the write-up, talks to the resident, and makes a determination as to whether the write-up is legitimate. According to Ms. Cochran, all three of the write-ups about Petitioner were allowed to proceed. (Probation Violation Hr'g Tr. at 14-15, Aug. 15, 2013, ECF No. 9-8, Pg ID 164-65.)

As for the decision to terminate Petitioner from Tri-CAP, Ms. Cochran explained that Petitioner's case manager, Josh Renckly, was the person who had immediate contact with Petitioner and that Renckly reported Petitioner's violation of rules to her. She then communicated with the executive director, who made the final decision to terminate Petitioner. (*Id.* at 13-14, Pg ID 164.)

In light of Ms. Cochran's testimony, it is unlikely that any of the staff at Tri-CAP would have provided testimony favorable to the defense. Therefore, Petitioner's attorney was not ineffective for failing to subpoena staff from Tri-CAP to testify at the hearing.

### 3. Defense Counsel's Advice

Petitioner's final claim about his hearing attorney is that the attorney assured him he would prevail at the probation-violation hearing and, therefore, he did not have to subpoena any witnesses in his defense. Defense counsel obviously was mistaken about Petitioner's chances of success at the hearing. Nevertheless, as noted in the previous section, it is unlikely that anyone from Tri-CAP would have testified in Petitioner's favor, and Petitioner has not named anyone else whom defense counsel could have called as a witness. Consequently, the allegedly deficient advice about not needing any witnesses at the hearing did not prejudice Petitioner.

### IV.  Conclusion

The state trial court concluded on review of Petitioner's claim that defense counsel was not ineffective, and the Michigan Court of Appeals rejected Petitioner's claim for lack of merit. These decisions were not contrary to, or an unreasonable application of, *Strickland*. They also were not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. The Court therefore denies the petition for writ of habeas corpus.

### V.  Denial of a Certificate of Appealability

Before Petitioner may appeal this Court's decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented

are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Reasonable jurists could not disagree with the Court's assessment of Petitioner's claim, nor conclude that the issue deserves encouragement to proceed further. The Court therefore declines to issue a certificate of appealability. Petitioner nevertheless may apply to the Court of Appeals for a certificate of appealability, and he may proceed *in forma pauperis* on appeal if he appeals this decision, because he was granted *in forma pauperis* status in this Court, and an appeal could be taken in good faith. Fed. R. App. P. 24(a)(3)(A).

                                                               s/ Nancy G. Edmunds
                                                               NANCY G. EDMUNDS
Dated: August 1, 2016                          UNITED STATES DISTRICT JUDGE

## CERTIFICATION

I hereby certify that a copy of this order was served upon counsel and/or the parties

On this lst day of August, 2016 by regular mail and/or CM/ECF notification.

                                                               s/ Carol J Bethel
                                                                Case Manager